DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| MEAGHAN RICHARDSON and CYRIL RICHARDSON, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2008-144 |
| v. | ) ) | |
| THE ATTORNEY GENERAL OF THE BRITISH VIRGIN ISLANDS and RANDY DONOVAN, | ) ) ) ) | |
| Defendants. | ) ) | |

ATTORNEYS:

**Thomas F. Friedberg**
Law Offices of Friedberg & Bunge
San Diego, CA
    *For the plaintiffs.*

**The Attorney General of the British Virgin Islands**
    *Pro Se.*

**Randy Donovan**
    *Pro Se.*


## MEMORANDUM OPINION

**GÓMEZ, J.**

    On or about December 1, 2007, Meaghan Richardson and Cyril Richardson ("the Richardsons") were passengers on a power boat. At or about 9:14 p.m., Randy Donovan ("Donovan"), a customs officer for the Government of the British Virgin Islands (the "BVI"), stopped the Richardsons' boat. Donovan informed the Richardsons that their boat was in BVI waters. Thereafter, Donovan ordered the Richardsons and the other passengers on the

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 2

boat to disembark from their vessel and enter his vessel.

Donovan's vessel was owned by the BVI. The Richardsons allege

that after they boarded Donovan's boat, Donovan operated his

boat without maintaining a safe speed or a proper lookout. The

Richardsons claim that they sustained injuries as a result of

Donovan's operation of the vessel.

Thereafter, on November 15, 2008, the Richardsons filed

this negligence action against the Attorney General of the BVI

and against Donovan in his individual capacity.

The Attorney General of the BVI and Donovan have not

appeared in this case.[1] As such, the Richardsons moved for entry

of default against the defendants.

On July 23, 2010, the Magistrate Judge issued an order in

which he found that the Richardsons properly effected service on

the BVI and Donovan. The Magistrate nonetheless denied the

motion because the plaintiffs had not "established that the

alleged tortious act occurred in the United States or that there

has been a waiver of foreign immunity." (July 23, 2012, Order,

ECF No. 12.)

Thereafter, the Richardsons filed a second motion for entry

of default. The Richardsons attached Cyril Richardson's

---

[1] The Richardsons assert that they served the Attorney General of the BVI by
leaving a copy of the summons and complaint with a clerk in the Attorney
General's chambers. The Richardsons also assert that they served Donovan in
person in the BVI.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 3

affidavit to the motion. In his affidavit, Cyril Richardson averred that the underlying incident occurred in the United States. (ECF No. 14.)

On February 17, 2011, the Magistrate Judge granted the Richardsons' motion for entry of default. In the order, the Magistrate noted that there was "topographical corroboration . . . to establish that the alleged tort occurred in the United States." (Magistrate Order, Feb. 17, 2011.) The Magistrate further stated that the "[d]efendants Attorney General of the Government of the BVI and Randy Donovan have been duly served and have failed to answer or otherwise respond to the Complaint." (Magistrate Order, Feb. 17, 2011.)

On August 29, 2011, the undersigned held a bench trial in this matter. At the conclusion of the bench trial, the Court asked the Richardsons from what entity they sought relief. Specifically, the Court asked, "[w]hen you sued the Attorney General of the British Virgin Islands, it was your intention to sue the government of the British Virgin Islands, correct?" (Trial FTR R. 9:28:26-30.) The Richardsons responded in the affirmative. (*Id.* at 9:28:33.) Thereafter, the Court requested that the Richardsons file a brief addressing whether the Attorney General of the BVI was the properly named party in this

matter and whether service on the Attorney General was properly
executed. The Richardsons complied.

In the event that the Court finds that the Attorney General
of the BVI was not properly named in this matter, the
Richardsons request leave to amend their complaint to name the
Government of the BVI. In the event that the Court finds that
the defendants were not properly served, the Richardsons request
leave to properly effect service.

## ANALYSIS

### I. SUITS AGAINST A FOREIGN GOVERNMENT

A threshold issue presented by the Richardsons' complaint
is whether a suit naming the Attorney General of the BVI as a
defendant is effectively a suit against the BVI. To the extent
it is, the Richardsons have named the proper party and the Court
may need to address the issue of sovereign immunity. To the
extent it is not, the Court may need to address the motion for
leave to amend.

"In determining whether a foreign entity is to be treated
as the state itself or as an agency or instrumentality, courts
employ the 'core functions' test as it was set out in *Roeder v.
Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003)." *Baker
v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48,
73 (D.D.C. 2011) ("An official capacity claim against a

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 5

government official is a claim against the government itself.").
In *Roeder*, the D.C. Circuit "adopted a categorical approach: if
the core functions of the entity are governmental, it is
considered the foreign state itself; if commercial, the entity
is an agency or instrumentality of the foreign state." 333 F.3d
at 234.

Here, the Richardsons have named the Attorney General of
the BVI as the defendant. According to the BVI Constitution,

> (a)  There shall be an Attorney General of the Virgin
>      Islands, whose office shall be a public office
>      and who shall be appointed in accordance with
>      section 95.

> (b)  The Attorney General shall be the principal legal
>      advisor to the Government of the Virgin Islands.

British Virgin Islands Constitution Order 2007, June 13, 2007,
SI 1678, art. 58 (BVI). Certainly, the Attorney General's role
as the principal legal advisor to the BVI Government is a
governmental, as opposed to a commercial function. Because the
Attorney General's core functions are governmental, a suit
against the Attorney General of the BVI must be construed as a
suit against the BVI itself. *See, e.g.*, *Roeder*, 333 F.3d at 234
(concluding that the core functions of Iran's Ministry of
Foreign Affairs is "clearly on the governmental side" and thus
the Ministry "must be treated as the state of Iran itself rather
than as its agent.").

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 6

Having determined that the Government of the BVI is indeed the party being sued in this matter, the Court will next address whether it may properly exercise subject matter jurisdiction over this action against the Government of the British Virgin Islands (the "BVI"). If the Court determines that it has subject matter jurisdiction, it will then determine whether it may exercise personal jurisdiction over the BVI.

## A. Subject Matter Jurisdiction over a Foreign Sovereign: Foreign Sovereign Immunity

The Foreign Sovereign Immunities Act, 28 U.S.C.A. § 1330 et seq ("FSIA")[2], allows a court to exercise subject matter jurisdiction over any action against a foreign state in which "the foreign state is not entitled to immunity." 28 U.S.C. § 1604. The FSIA is "the sole basis for obtaining [subject matter]

---

[2] 28 U.S.C.A. § 1330 provides that

> (a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

> (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

> (c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.

28 U.S.C.A. § 1330 (West).

jurisdiction over a foreign state in our courts." *Argentine*

*Republic v. Amerada Hess Shipping Corp.,* 109 S.Ct. 683, 688

(1989).

> In 1976, Congress passed the Foreign Sovereign
> Immunities Act in order to free the Government from
> the case-by-case diplomatic pressures, to clarify the
> governing standards, and to "assur[e] litigants that
> ... decisions are made on purely legal grounds and
> under procedures that insure due process," H.R.Rep.
> No. 94-1487, p. 7 (1976), reprinted in [1976] U.S.Code
> Cong. & Ad.News 6604. To accomplish these objectives,
> the Act contains a comprehensive set of legal
> standards governing claims of immunity in every civil
> action against a foreign state or its political
> subdivisions, agencies or instrumentalities.
>
> For the most part, the Act codifies, as a matter of
> federal law, the restrictive theory of sovereign
> immunity. A foreign state is normally immune from the
> jurisdiction of federal and state courts, 28 U.S.C. §
> 1604, subject to a set of exceptions specified in §§
> 1605 and 1607. *Those exceptions include actions in*
> *which the foreign state has explicitly or impliedly*
> *waived its immunity, § 1605(a)(1), and actions based*
> *upon commercial activities of the foreign sovereign*
> *carried on in the United States or causing a direct*
> *effect in the United States, § 1605(a)(2).*[] When one
> of these or the other specified exceptions applies,
> "the foreign state shall be liable in the same manner
> and to the same extent as a private individual under
> like circumstances," 28 U.S.C. § 1606.

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89,

103 S. Ct. 1962, 1968-69, 76 L. Ed. 2d 81 (1983) (emphasis

added). "The foreign state bears the burden of persuasion on the

issue of immunity under the FSIA, but once a *prima facie* showing

of immunity has been made, the plaintiff seeking to litigate in

the district court bears the burden of coming forward with facts

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 8

showing that an exception applies." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citing *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,* 965 F.2d 1375, 1383 (5th Cir. 1992)). The Court will address the relevant FSIA exceptions, listed in 28 U.S.C.A. § 1605[3], in turn.

### i. *Waiver Exception*

"A claim of sovereign immunity under the FSIA is waived only when the sovereign/state fails to assert immunity in a responsive pleading." *MCI Telecommunications Corp. v. Alhadhood*,

---

[3] 28 U.S.C.A. § 1605, in pertinent part, provides that

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
>
> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
>
> . . .
>
> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--
>
> > (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
> >
> > (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . .

28 U.S.C.A. § 1605(a).

82 F.3d 658, 662 (5th Cir. 1996) (citing *Rodriguez v. Transnave Inc.,* 8 F. 3d 284, 287 (5th Cir. 1993); *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C. Cir. 1990)). "Thus, a waiver of sovereign immunity cannot be implied from a foreign state's failure to appear. Such a waiver would be inconsistent with section 1608(e) of the FSIA, which requires the court to satisfy itself that jurisdiction exists prior to entering a default judgment.[1] '[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the Act.'" *MCI*, 82 F.3d at 662 (citing *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493-94 n. 20, 103 S. Ct. 1962, 1971 n. 20, 76 L. Ed. 2d 81 (1983)).

Here, the record reflects that the BVI has not filed a responsive pleading. It has not appeared or done anything otherwise that explicitly or impliedly waived its immunity. As such, the waiver exception to the FSIA does not apply here. *See generally International Association of Machinists and Aerospace Workers v. Organization of Petroleum Exporting Countries*, 477 F. Supp. 553, 575 (C.D. Cal. 1979) (finding no waiver of sovereign immunity from the sovereign's failure to answer). *Compare Flota Maritima Browning de Cuba v. Motor Vessel Ciudad*, 335 F.2d 619 (4th Cir. 1964) (finding that the Republic of Cuba waived the

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 10

defense of sovereign immunity by filing a general appearance and waiting three years to raise the defense of sovereign immunity).

### *ii. "Commercial Activity" Exception*

The "commercial activity" exception to foreign sovereign immunity applies where a foreign sovereign has conducted commercial activities in the United States. *See Verlinden B.V.*, 461 U.S. at 488-89. Commercial activity is defined as

> "either a regular course of commercial conduct or a particular transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id. See also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). We have stated "that an activity has a commercial nature for purposes of FSIA immunity if it 'is of a type that a private person would customarily engage in for profit.' " *Walter Fuller*, 965 F.2d at 1384 (5th Cir. 1992) (quoting *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1108 n. 6 (5th Cir.1985)).

*MCI*, 82 F.3d at 662-63.

There is no commercial activity alleged here. Indeed, the underlying incident, which involves an allegedly negligent arrest of a vessel and its passengers, is not of a nature that a private person would undertake for profit. *See MCI*, 82 F.3d at 662-63. As such, the "commercial activity" exception is not applicable. *See id.*

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 11

### iii. Tortious Action Exception

The FSIA also provides that foreign sovereign immunity is

not available in any case

> not otherwise encompassed in paragraph (2) above, in
> which money damages are sought against a foreign state
> *for personal injury* or death, or damage to or loss of
> property, occurring in the United States and caused by
> the tortious act or omission of that foreign state or
> of any official or employee of that foreign state
> *while acting within the scope of his office or
> employment;* . . .

28 U.S.C.A. § 1605(a)(5) (West) (emphasis added). This exception

has been referred to as the tortious activity exception.

Here, the Richardsons are seeking money damages against the

defendant BVI, a foreign state, for personal injury that

occurred within the United States. (Compl. ¶¶ 1-36.) Thus, this

exception is applicable as long as the injury was caused by an

employee of the BVI acting within the scope of his employment.

*See generally Howland v. Hertz Corp.*, 431 F. Supp. 2d 1238, 1241

(M.D. Fla. 2006).

"[T]he 'scope of employment' provision of the 'tortious

activity' exception requires a finding that the doctrine of

*respondeat superior* applies to the tortious act or omission

committed by the officer or employee of the foreign state."

*Moran*, 27 F.3d at 173 (5th Cir. 1994) (citing *Liu v. Republic of

China*, 892 F.2d 1419, 1425 (9th Cir. 1989)). "State law, not

federal common law, governs whether an officer's or employee's

action is within the scope of employment in determining the applicability of the FSIA." *Moran*, 27 F.3d at 173 (citing *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591, 2598 n. 11, 77 L.Ed.2d 46 (1983); *Liu,* 892 F.2d at 1425).

Under Virgin Islands law, respondeat superior liability requires that (1) the employee's tort encompasses the type of action the employee was hired to perform, (2) the employee's tort occurs within prescribed limits of time and space, and (3) the employee's tort purposefully serves the employer." *Warrington v. Camacho*, Civil No. 2006-235, 2007 WL 3124674, at *2 (D.V.I. Oct. 22, 2007) (internal citations omitted).

"An employer is subject to liability for torts committed by employees while acting *within* the scope of their employment." Restatement (Third) Of Agency § 2.04 (2006) (emphasis added). In explaining the term "scope of employment," the Restatement (Third) of Agency[4] states that

> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. *An employee's act is not within the scope of employment when it occurs within an*

---

[4] Significantly, there is no Virgin Islands Code section which addresses respondeat superior liability. Because Virgin Islands law is silent as to the extent of such liability, the Court must look to the common law, as expressed in the principles of the Restatement, to provide the rules of decision. V.I. Code Ann. tit. 1, § 4.

> *independent course of conduct not intended by the*
> *employee to serve any purpose of the employer.*

Restatement (Third) of Agency § 7.07(2). "If an employee

undertakes a course of work-related conduct for the sole purpose

of furthering the employee's interests or those of a third

party, the employee's conduct will often lie beyond the

employer's effective control." *Id*. at § 7.07 cmt b.

At trial, the Richardsons presented evidence that, on

December 1, 2007, while they were passengers on a boat in the

territorial waters of the United States Virgin Islands, they

were stopped by Donovan, while he was on duty as a BVI customs

officer. Donovan ordered the Richardsons onto a vessel owned by

the Government of the BVI. While the Richardsons were aboard,

Donovan operated the vessel in such a way that resulted in

injury to the Richardsons.

The conduct that the Richardsons described during their

trial testimony as undertaken by Donovan assuredly comports with

that of a customs officer undertaking his official duties.

Indeed, surely a customs officer acts within the scope of his

duties by (1) operating his government issued vessel, (2)

arresting a private vessel (and its passengers) which is

suspected of violating applicable law and (3) taking control of

such private vessel. There is no indication that Donovan

purported to act in a capacity other than as a customs official.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 14

As such, for the limited purpose of the immunity analysis, the
Court finds that Donovan's alleged actions which gave rise to
the Richardsons' complaint encompass the type of action that
Donovan was hired to perform. *See generally Warrington*, 2007 WL
3124674, at *2.

Further, the testimony adduced at trial shows that
Donovan's purportedly tortious conduct occurred within
prescribed limits of time and space. Indeed, Donovan wore his
BVI customs officer uniform. Donovan presented himself as an on
duty customs officer – in both his dress and his actions.

Finally, the evidence adduced at trial shows that Donovan's
allegedly tortious actions were undertaken to serve his
employer, the BVI. Indeed, Donovan halted the Richardsons'
vessel, explaining to them that he was doing so because they
were in violation of BVI law. Donovan arrested the Richardsons
and ordered them to board his BVI-issued vessel. Donovan then
attempted to transport the Richardsons back to the BVI customs
office. While doing so, Donovan caused his vessel to collide
with the Richardsons' vessel. That collision resulted in
personal injury to the Richardsons. This court has found that
similar employee conduct fell within the scope of employment.
*See, e.g.*, *Anderson v. Gov't of the Virgin Islands*, 199 F. Supp.
2d 269 (D.V.I. 2002) (finding that an officer was acting within

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 15

the scope of his employment as customs agent at time he

allegedly investigated and conducted surveillance of the

plaintiff, resulting in claims for intentional infliction of

emotional distress, invasion of privacy, and false light). *See*

*also Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989),

*certiorari dismissed*, 111 S.Ct. 27, 497 U.S. 1058 (finding that

the sovereign's director of defense intelligence acted within

the scope of his employment in ordering an assassination). *But*

*see Howland v. Hertz Corp.*, 431 F. Supp. 2d 1238 (M.D. Fla.

2006) (finding that employees of the sovereign's central bank

were not acting within the scope of their employment during a

business trip when they caused an accident that resulted in

personal injury while using a rental car for their own personal

enjoyment). As such, the Court finds that Donovan was acting in

the scope of his employment when he committed the allegedly

tortious act.

Based on the foregoing, the Court finds that the tortious

activity exception to the FSIA applies. As such, the BVI is not

entitled to foreign sovereign immunity in this action. Thus, the

Court may exercise subject matter jurisdiction over this matter

insofar as the Richardsons assert tort claims against the BVI.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 16

## B. **Personal Jurisdiction over a Foreign Sovereign: Service on a Foreign Sovereign**

Now that the Court has determined that it may exercise subject matter jurisdiction over this action against the BVI, it must determine whether it may exercise personal jurisdiction. That is, the court must determine whether the BVI was properly served. *See generally Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002) ("If service of process has been made under § 1608, personal jurisdiction over a foreign state exists for every claim over which the court has subject matter jurisdiction.") (citing 28 U.S.C. § 1330(b)).

Federal Rule of Civil Procedure 4 provides, in pertinent part, that "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1).

28 U.S.C. § 1608 ("Section 1608"), subsection (a), "prescribes four methods of service, in descending order of preference. Plaintiffs must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008). Specifically, Section 1608(a) provides that

> (a)  Service in the courts of the United States and of the States shall be made upon a foreign state *or political subdivision of a foreign state*:

> (1)    by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; *or*

> (2)    if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

> (3)    if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court *to the head of the ministry of foreign affairs* of the foreign state concerned, or

> (4)    if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court *to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services*--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

> As used in this subsection, a "notice of suit" shall mean a notice *addressed to a foreign state* and in a form prescribed by the Secretary of State by regulation.

28 U.S.C.A. § 1608(a) (emphasis added). Section 1608(b) provides

that

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 18

    (b) Service in the courts of the United States and of the States shall be made upon an *agency or instrumentality of a foreign state*:

    (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

    (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

    (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

    (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

    (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

    (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C.A. § 1608(b).

    Section 1608(a) governs service upon a "foreign state or political subdivision of a foreign state," while subsection (b) provides for service upon an "agency or instrumentality" of a foreign state. 28 U.S.C. § 1608.

> [T]he distinctions between the service provisions for
> foreign states in § 1608(a) and the provisions for
> agencies and instrumentalities in § 1608(b) are
> "neatly tailored to the differences between 'foreign
> states' and 'agencies or instrumentalities.' The
> latter, typically international commercial
> enterprises, often possess a sophisticated knowledge
> of the United States legal system that other organs of
> foreign governments may lack." *Transaero*, 30 F.3d at
> 154. Therefore, "*strict adherence to the terms of [§]
> 1608(a) is required*" for service against a foreign
> state itself, *even though technically faulty service
> under § 1608(b) may suffice for agencies or
> instrumentalities*. *Id.* at 153-54. It then follows that
> the requirements of § 1608(a), *strict adherence to
> which is necessary to ensure that a foreign state has
> adequate notice of the suit against it, also apply in
> actions against officers that are the practical
> equivalent of suits against the state itself*. *See
> Kentucky v. Graham*, 473 U.S. at 166, 105 S.Ct. 3099
> . . . To find otherwise would enable a plaintiff to
> avoid the heightened service requirements of § 1608(a)
> and thereby "disorder the statutory scheme,"
> *Transaero*, 30 F.3d at 154, simply by naming an officer
> as the defendant.

*Nikbin*, 471 F. Supp. 2d at 66.

The Court must now determine whether service on the BVI is
governed by the strict standards of Section 1608(a) or the more
relaxed standards of Section 1608(b). Specifically, the inquiry
is whether the BVI is considered a foreign state/political
subdivision of a foreign state or an agency/instrumentality of a
foreign state under Section 1608.

Ordinarily, the Court would turn to a statutory definition
for a term created or referenced in a statute. Section 1608(a)
does not define the term "political subdivision." Thus, the

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 20

Court will look to legislative history for guidance in defining the term.

The relevant legislative history indicates that "[t]he term 'political subdivisions' includes all governmental units beneath the central government, including local governments." H.R. Rep. No. 1487, H.R. REP. 94-1487, 15, 1976 U.S.C.C.A.N. 6604, 6613.

Unlike "political subdivisions," the term "agency or instrumentality of a foreign state" is defined in the statute. In pertinent part, Section 1603 provides that

> (b) An "agency or instrumentality of a foreign state" means any entity--
>
>> (1) which is a separate legal person, corporate or otherwise, *and*
>>
>> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, *and*
>>
>> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C.A. § 1603 (West). While the statutory definition of "agency or instrumentality" is fairly helpful, legislative history provides more guidance as to what Congress meant in using that term.

> The first criterion, that the entity be a separate legal person, is intended to include a corporation, association, foundation, or any other entity which,

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 21

> under the law of the foreign state where it was
> created, can sue or be sued in its own name, contract
> in its own name or hold property in its own name.
>
> The second criterion requires that the entity be
> either an organ of a foreign state (or of a foreign
> state's political subdivision), or that a majority of
> the entity's shares or other ownership interest be
> owned by a foreign state (or by a foreign state's
> political subdivision). If such entities are entirely
> owned by a foreign state, they would of course be
> included within the definition. Where ownership is
> divided between a foreign state and private interests,
> the entity will be deemed to be an agency or
> instrumentality of a foreign state only if a majority
> of the ownership interests (shares of stock or
> otherwise) is owned by a foreign state or by a foreign
> state's political subdivision.
>
> . . . .
>
> As a general matter, entities which meet the
> definition of an 'agency or instrumentality of a
> foreign state' could assume a variety of forms,
> including a state trading corporation, a mining
> enterprise, a transport organization such as a
> shipping line or airline, a steel company, a central
> bank, an export association, a governmental
> procurement agency or a department or ministry which
> acts and is suable in its own name.

H.R. Rep. No. 1487, H.R. REP. 94-1487, 15, 1976 U.S.C.C.A.N.

6604, 6614.

In determining whether the BVI fits more closely into the

definition of an "agency or instrumentality" as opposed to a

"political subdivision," a brief overview of the governmental

structure of the BVI is in order.

"[T]he United Kingdom acts on the BVI's behalf in the

international arena." *Traffic Stream*, 536 U.S. at 94. Indeed,

> The current BVI Constitution was established
> when the Crown of the United Kingdom, in the
> exercise of power granted by the West Indies
> Act, 1962, c. 19, § 5(1), issued the Virgin
> Islands (Constitution) Order 1976, SI
> 1976/2145. Under that order, the United
> Kingdom exercises pervasive authority over
> the territory. The Constitution provides,
> for example, that the BVI Government shall
> include a Governor and Deputy Governor
> appointed by the Queen to "hold office
> during Her Majesty's pleasure," id., pt. II,
> § 3(1), an Executive Council mainly
> appointed by the Governor on the basis of
> the popular election for the Legislative
> Council, §§ 14-15, and a Legislature
> comprising the Queen and a Legislative
> Council of mainly popularly elected
> representatives, §§ 25-26.
>
> Bills take effect as laws only when approved
> by the royally appointed Governor or by the
> Queen acting through a Secretary of State, §
> 42. The Governor is instructed to withhold
> assent from any bill that may conflict with
> the laws of the United Kingdom or is "likely
> to prejudice the Royal prerogative." §
> 42(2)(b). The Queen, acting through a
> Secretary of State, has authority to annul
> any BVI statute, § 43(1), and "[t]here is
> reserved to Her Majesty full power to make
> laws for the peace, order and good
> government of the Virgin Islands," § 71.
> "[I]f the Legislative Council fails to pass
> ... a Bill or motion ... the Governor may,
> at any time that he thinks fit, ... declare
> that such Bill or motion shall have effect
> as if it had been passed ...." § 44.

*Traffic Stream*, 536 U.S. at 92-93. "The United Kingdom exercises

ultimate authority over the BVI's statutory law, including its

corporate law and the law of corporate charter, and it exercises

responsibility for the BVI's external relations." *Id*. at 96.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 23

The BVI has its own constitution, citizens, governor, and statutory and corporate laws. Such characteristics make the BVI's function more akin to a "governmental unit" or local government "beneath the central government" of the United Kingdom than a United Kingdom owned "corporation, association, foundation or [] other entity." H.R. Rep. No. 1487; H.R. Rep. No. 94-1487, 15; 1976 U.S.C.C.A.N. 6604, 6613-14. As such, the Court finds that the BVI is a political subdivision of the United Kingdom. As a political subdivision of a foreign state, the BVI must be served in accordance with Section 1608(a). 28 U.S.C.A. 1608.

Looking to Section 1608(a), the Court finds that the first method of service is inapplicable here as there exists no "special arrangement for service" between the Richardsons and the BVI. *See id*. at § 1608(a)(1). As such, the Court must look to "an applicable international convention" to determine whether service was properly effected. *Id*. at § 1608(a)(2).

The applicable international convention here is the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765, commonly known as the "Hague Service Convention" or "Hague Convention." *See generally Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting*

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 24

*Countries*, 353 F.3d 916, 922 n.10 (11th Cir. 2003) ("The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters Done at The Hague, the Netherlands, November 15, 1965, 658 U.N.T.S. 163 ("Hague Service Convention"), provides rules governing service of process between signatory states."). The United States and United Kingdom are both signatories to the Hague Service Convention. 20 U.S.T. 361 (William Royall Tyler signing for the United States of America and Peter Garran signing for the United Kingdom of Great Britain and Northern Ireland). Through its signature and declaration, the United Kingdom has extended application of the Hague Convention to the BVI. *See* Hague Conference on Private International Law, *14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, http://www.hcch.net/index_en.php?act=conventions.childstatus&cid =17&mid=427 (last visited May 12, 2013) (listing the BVI as one of the United Kingdom territories over which "application of the Convention" has been extended)[5]; *see also*

---

[5] **14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters**
Entry into force: 10-II-1969

---

In case a particular territorial unit is not mentioned in this table of extensions, it means that the application of the Convention has not (yet) been extended to that territorial unit.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 25

http://www.hcch.net/index_en.php?act=authorities.details&aid=681[6]

(last visited May 12, 2013). "[C]ompliance with the [Hague]

| Territorial units | Extension | EIF | Auth | Res/D/N |
|---|---|---|---|---|
| Anguilla (UK) | 3-VIII-1982 | 2-X-1982 | | D |
| Bermuda (UK) | 20-V-1970 | 19-VII-1970 | | D |
| **British Virgin Islands (UK)** | **20-V-1970** | **19-VII-1970** | | **D** |
| Cayman Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Falkland Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Gibraltar (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Guernsey, Bailiwick of (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Isle of Man (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Jersey (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Montserrat (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Pitcairn (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Saint Helena (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Turks and Caicos Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| [former British territories] | | 19-VII-1970 | | D |

Hague Conference on Private International Law (emphasis added).

[6] <u>For the overseas territories</u> - with the following declarations:
"(a) In accordance with Article 18 of the Convention the authority shown against the name of each territory in the Annex (hereinafter severally called "the designated authority") is designated as the authority in that territory competent to receive requests for service in accordance with Article 2 of the Convention.
(b) The authority in each territory competent under Article 6 of the Convention to complete the Certificate of Service is the designated authority.
(c) In accordance with the provisions of Article 9 of the Convention, the designated Authority shall receive process *sent through consular channels*.
(d) With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service *through official channels* will be accepted in a territory listed in the Annex by the designated authority and only from judicial, consular or diplomatic officers of other Contracting States.
(e) The acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall equally apply to the territories named in the Annex.
The authorities designated in the Annex will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language."
*Annex:*

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 26

Convention is mandatory in all cases to which it

applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S.

694, 705 (1988).

The Hague Convention provides that

[Article 2:] Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States. . . .

[Article 3:] The authority or judicial officer competent under the law of the State in which the documents originate *shall* forward to the *Central Authority of the State addressed* a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

| | |
|---|---|
| Antigua [1] | *Please click here for the Central Authority of Antigua and Barbuda* |
| Bermuda | The Registrar of the Supreme Court, Bermuda. |
| *British Honduras (since 21 September 1981: Belize)* [2] | -- |
| *British Solomon Islands (since 7 July 1978: the Solomon Islands)* [2] | -- |
| **British Virgin Islands** | **The Registrar of the Supreme Court c/o Sonya Young Registrar, High Court P.O. Box 418 Road Town, Tortola British Virgin Islands Tel.: +1.284.494-3074 Fax: +1.284.494-6664** |

Hague Conference on Private International Law (emphasis added).

[Article 4:] If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

[Article 5:] The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

    (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

    (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

[Article 6:] The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 28

> The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.
>
> The certificate shall be forwarded directly to the applicant.

20 U.S.T. 361, art. 2-3 (emphasis added).

The "Central Authority" for the United Kingdom is "The Senior Master for the attention of the Foreign Process Section." *Authorities*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=authorities.details&aid=278 (last visited March 20, 2013). In addition to its Central Authority, the United Kingdom has provided for an additional authority to receive service, a "designated authority," for each of its Overseas Territories. *Authorities*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=authorities.details&aid=681 (last visited March 20, 2013). The designated authority for the BVI is "The Registrar of the Supreme Court c/o Sonya Young Registrar, High Court, P.O. Box 418, Road Town, Tortola, British Virgin Islands." *Id*.

Regarding service on the BVI, process server Dennis Spencer ("Spencer") states in his affidavit

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 29

> That I did *personally serve* on Tuesday 13 January 2009
> at 1:51 p.m., at the office of the Attorney General
> chambers of the British Virgin Islands the-
>
> (a)  Summons; and
> (b)  Complaint for Damages;
>
> in this matter by handing the said documents to a clerk
> of the above office.

(Spencer Aff. at ¶ 1) (emphasis added).

The Richardsons' chosen method for effecting service on the BVI gives the Court pause. The Richardsons provide no evidence that they served the BVI through the BVI's designated authority. "Neither substantial compliance with § 1608(a)'s requirements nor actual notice of the suit excuses plaintiffs' deviation from the section's mandates." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005).

The Richardsons maintain that they properly effected service on the BVI when they served a clerk in the BVI Attorney General's office. Service in that manner did not comport with the strict requirements of Section 1608 and the Hague Convention. Because the Richardson's have not effectuated service on the BVI pursuant to Section 1608(a)(2), the Richardson's claims against the BVI fail for want of proper service. *Id*. As such, personal jurisdiction over the BVI is not proper.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 30

## C. Leave to Properly Effect Service

The Richardsons request leave to properly serve the British Virgin Islands. The U.S. Court of Appeals for the Third Circuit has explained that

> Proper service is an essential step in establishing a district court's personal jurisdiction over the defendants. . . . "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). "If a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If a plaintiff can show "good cause" for the failure to timely serve a defendant, "the court must extend the time for service for an appropriate period." *Id*. This Circuit has equated good cause with the concept of excusable neglect. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d Cir. 1995).
>
> District courts conduct a two-part analysis when determining whether to extend the time for service of a summons and complaint. *Boley*, 123 F.3d at 758. First, the district court must determine "whether good cause exists for a plaintiff's failure to effect timely service." *Id*. If good cause does not exist, the district court must then "consider whether to grant a discretionary extension of time." *Id*.
>
> . . . .
>
> A showing of good cause "requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). Indeed, the "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place." *Boley*, 123 F.3d at 758 (quoting MCI, 71 F.3d at 1097).

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 31

*Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009).

Here, the Court has determined that the Richardsons have not effected service on the BVI in accordance with the Hague Convention. That finding requires the Court to vacate the Magistrate Judge's February 17, 2011, entry of default against the BVI. It does not, however, necessitate dismissing the complaint. To be sure, the Richardsons have made a good faith attempt to serve the BVI (via the Attorney General's office). The Richardsons simply failed to comply with the Hague Convention's technical requirements. Those defects appear readily curable. As such, the suit against the BVI may go forward if the Richardsons perfect service by a date certain that will be set by the Court. *See* Fed. R. Civ. P. 4(j); 28 U.S.C. § 1608.

## II.  SUITS AGAINST A FOREIGN INDIVIDUAL

In addition to suing the BVI, the Richardsons' also seek to sue Randy Donovan. It is axiomatic that a court may not enter judgment against a defendant over whom it does not have jurisdiction. As such, the Court must determine whether it may exercise jurisdiction over Randy Donovan in light of the restrictions imposed by the Foreign Sovereign Immunities Act.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 32

In *Samantar v. Yousuf*, 130 S.Ct. 2278 (2010), the Supreme Court analyzed the federal courts' jurisdictional reach over foreign officials under the Foreign Sovereign Immunities Act ("FSIA"). In *Samantar*, the plaintiff natives of Somalia alleged that the former Vice President and Minister of Defense of Somalia, Mohamed Ali Samantar ("Samantar") authorized the torture and extrajudicial killings of their family members. The plaintiffs sought damages from Samantar. Samantar argued that he was immune from suit under the FSIA because the actions were taken in his official capacity. The Court addressed whether an individual sued for conduct undertaken in his *official* capacity qualifies as a "foreign state" within the meaning of the FSIA. *Id*. at 2286.  The Court observed that section 1603 of the FSIA defined "foreign state" as:

> (a) A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

> (b) An 'agency or instrumentality of a foreign state' means any entity-

>> (1) which is a separate legal person, corporate or otherwise, and

>> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

*Samantar v. Yousuf,* 130 S. Ct. 2278, 2286 (2010) (internal quotations omitted).

The FSIA provides that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604.  "The Act, if it applies, is the 'sole basis for obtaining jurisdiction over a foreign state in federal court.'" Samantar v. Yousuf, 130 S.Ct. 2278, 2286 (2010).

The Court noted that several provisions of FSIA pointed away from reading "foreign state" to include foreign individuals:

> First, the statute specifies that " 'agency or instrumentality ...' means any entity" matching three specified characteristics, § 1603(b) (emphasis added), and "entity" typically refers to an organization, rather than an individual. *See, e.g.,* Black's Law Dictionary 612 (9th ed. 2009). Furthermore, several of the required characteristics apply awkwardly, if at all, to individuals.
>
> . . . .
>
> Moreover, elsewhere in the FSIA Congress expressly mentioned officials when it wished to count their acts

> as equivalent to those of the foreign state, which
> suggests that officials are not included within the
> unadorned term "foreign state." *Cf*. *Kimbrough v.
> United States*, 552 U.S. 85, 103, 128 S.Ct. 558, 169 L.
> Ed. 2d 481 (2007) ("Drawing meaning from silence is
> particularly inappropriate ... [when] Congress has
> shown that it knows how to [address an issue] in
> express terms").

*Samantar*, 130 S. Ct. at 2286-2288. The *Samantar* court further

noted that "[o]ther provisions of the statute also point away from

reading 'foreign state' to include foreign officials. Congress

made no express mention of service of process on individuals in

§ 1608(a), which governs service upon a foreign state or

political subdivision. Although some of the methods listed could

be used to serve individuals-for example, by delivery 'in

accordance with an applicable international convention,' §

1608(a)(2)-the methods specified are at best very roundabout

ways of serving an individual official." *Id*. at 2288.

After an exhaustive analysis of the FSIA, the Supreme Court

concluded "there is nothing to suggest we should read 'foreign

state' in § 1603(a) to include an official acting on behalf of

the foreign state, and much to indicate that this meaning was

not what Congress enacted." *Id*. at 2289. The Court held that an

individual foreign official sued for conduct undertaken in his

official capacity is not a "foreign state" entitled to immunity

from suit within the meaning of the FSIA. As such, the Court

determined that the FSIA did not deprive the trial court of

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 35

subject-matter jurisdiction. The *Samantar* court noted the
narrowness of its holding and emphasized that a foreign official
might be entitled to immunity in his official capacity under
common law. The court remanded the case to the Fourth Circuit.

On remand from the Supreme Court's *Samantar* decision, the
Fourth Circuit explored, in *Yousuf v. Samantar*, 699 F.3d 763
(4th Cir. 2012) (hereinafter, "*Yousuf*"), a foreign official's
entitlement to common law immunity. The *Yousuf* court noted that
common law immunity for foreign officials is "conduct-based
immunity that applies to current and former foreign officials."
*Yousuf*, 699 F.3d at 769 (citing *Matar v. Dichter*, 563 F.3d 9, 14
(2d Cir. 2009) ("An immunity based on acts—rather than status—
does not depend on tenure in office.")). After a lengthy venture
into the history of common law immunity for foreign officials,
the Fourth Circuit explained that the vast landscape of cases
which make up the common law

> sketch out the general contours of official-act
> immunity: a foreign official may assert immunity for
> official acts performed within the scope of his duty,
> but not for private acts where "the officer purports
> to act as an individual and not as an official, [such
> that] a suit directed against that action is not a
> suit against the sovereign." *Chuidian*, 912 F.2d at
> 1106 (internal quotation marks omitted). A foreign
> official or former head-of-state will therefore not be
> able to assert this immunity for private acts that are
> not arguably attributable to the state, such as drug
> possession or fraud. *See*, *e.g.*, *In re Doe*, 860 F.2d
> 40, 45 (2d Cir. 1988) ("[W]ere we to reach the merits
> of the issue, we believe there is respectable

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 36

> authority for denying head-of-state immunity to a
> former head-of-state for private or criminal acts in
> violation of American law.").

*Yousuf*, 699 F.3d at 775.

The *Yousuf* court then explained that "[t]here has been an
increasing trend in international law to abrogate foreign
official immunity for individual who commit acts, otherwise
attributable to the State, that violate *jus cogens* [] — *i.e.*,
they commit international crimes or human rights
violations . . ." *Id.* at 776. The Court then determined in its
enactment of the Torture Victim Protection Act of 1991 ("TVPA"),
28 U.S.C. § 1350, the U.S. Congress "essentially created an
express private right of action for individuals victimized by
torture and extrajudicial killing . . ." *Id.* (citing S.Rep. No.
102-249, at 8 (1991) ("[B]ecause no state officially condones
torture or extrajudicial killings, few such acts, if any, would
fall under the rubric of 'official actions' taken in the course
of an official's duties.")). The court concluded that

> Because this case involves acts that violated *jus
> cogens* [], including torture, extrajudicial killings
> and prolonged arbitrary imprisonment of politically
> and ethnically disfavored groups, we conclude that
> Samantar is not entitled to conduct-based official
> immunity under the common law, which in this area
> incorporates international law. . . . Thus, we affirm
> the district court's denial of Samantar's motion to
> dismiss based on foreign official immunity.

*Yousuf*, 699 F.3d at 778.

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 37

Here, the Richardsons have chosen to sue Randy Donovan, a BVI customs officer, for acts undertaken during the course of his duties as a customs officer. Specifically, the Richardsons allege in their complaint that

> 10.  At all times herein mentioned, the M/V "Guilt Trip" was operating with the Territorial waters of the United States Virgin Islands. While within the territorial waters of the United States Virgin Islands, and specifically within 1 nautical mile due north of Flanagan Island, and at or near 9:14 pm, the M/V "Guilt Trip" was *stopped by defendant Randy Donovan acting as a Servant of the Crown of the Government of the British Virgin Islands*.

> 11.  At that time and place, defendant, *Randy Donovan, ordered* plaintiff, Meaghan Richardson and the five other passengers into a 28 foot Wellcraft Scarab, *owned by the Government of the British Virgin Islands, under the guise that the M/V "Guilt Trip" was within the waters of the British Virgin Islands*. Plaintiff, along with the other passengers, complied with the orders of defendant, Randy Donovan, even though the M/V "Guilt Trip" had not left the Territorial waters of the United States Virgin Islands. Defendant, Randy Donovan, ordered Ryan Uszenski and another currently unidentified British Virgin Islands customs officer, to remain in the M/V "Guilt Trip". The unidentified customs officer took control of the M/V "Guilt Trip".

> . . . .

> 14.  The conduct of defendant, Randy Donovan, *in acting as a Servant of the Crown of the British Virgin Islands and in operating a vessel owned by the Government of the British Virgin Islands* was negligent and careless and resulted in substantial injuries to plaintiff, Meaghan Richardson, as herein alleged.

> . . . .

> 29.  The conduct of defendant, Randy Donovan, in a*cting as a Servant of the Crown of the British Virgin*

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 38

> *Islands and in operating a vessel owned by the*
> *Government of the British Virgin Islands* was negligent
> and careless and resulted in substantial injuries to
> plaintiff, Cyril Richardson, as herein alleged.

(Compl. ¶¶ 10-11, 14, 29.)

The conduct that the Richardsons describe in their

complaint as undertaken by Donovan assuredly comports with that

of a customs officer undertaking his official duties. Indeed,

surely a customs officer acts within the scope of his duties by

(1) operating his government issued vessel, (2) arresting a

private vessel (and its passengers) which is suspected of

violating applicable law and (3) taking control of such private

vessel. There is no indication that Donovan purported to act in

a capacity other than official. There is no indication that

Donovan undertook private or criminal acts in violation of

American law. As such, for the limited purpose of the immunity

analysis, the Court finds that Donovan's alleged actions which

gave rise to the Richardsons' complaint were undertaken within

the scope of his duty and thus fit neatly within the general

contours of official-act immunity. See *Yousuf*, 699 F.3d at 775.

Thus, the Court finds that Donovan is immune from suit in the

instant matter.

Because Donovan is immune from suit in this matter, the

Court may not properly exercise subject-matter jurisdiction over

the claims alleged against him. As such, the Court need not

*Richardson v. Attorney General of the BVI*
Civil No. 2008-cv-144
Memorandum Opinion
Page 39

reach the issue of whether it may assert personal jurisdiction

over Donovan. Thus, the Court will dismiss the Richardsons'

complaint as against Donovan. An appropriate order follows.


                                        S_____
                                         **Curtis V. Gómez**
                                         **District Judge**